### August Boehne, Appellee, v. Illinois Central Railroad Company, Appellant.

1. CONTRIBUTORY NEGLIGENCE—*when servant guilty of.* A servant who undertakes to do work which he knows is beset with danger, and neglects to avail himself of ready means, with which he is also acquainted, by which he may remove the danger, is guilty of contributory negligence.

Action in case for personal injuries. Appeal from the Circuit Court of Marion county; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the August term, 1907. Reversed. Opinion filed March 18, 1908.

W. A. BARR, for appellant; J. M. DICKINSON, of counsel.

W. F. BUNDY and FRANK F. NOLEMAN, for appellee.

Boehne v. Illinois Central Railroad Company.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee lost his hand while operating a wood planer in appellant's machine shop, and, having brought suit, obtained a judgment against appellant for $2,550, from which this appeal is prosecuted.

At the time of the injury appellee was twenty-six years old and had worked for appellant about two years, the first year as a car repairer and afterwards as an assistant in the shops, where it was his duty to oil and help run the machines, of which there were some seven or eight. One of these was a wood planer used in planing down car sills and other timbers of like character, and at the time of the injury he was helping at this machine.

This planer was some three feet wide and eight feet long. There were knives in a frame in the middle of the bed, and also other knives above these, in another frame, and the timbers passed between, being carried through by means of an endless chain. The frames holding the knives were circular and when in motion the knives revolved at a speed of 2,000 times a minute. These knives were set in motion by means of a lever, extending down from pulleys above, that shifted the belt from a loose pulley onto a tight one, connecting with the steam power provided to operate the machinery, and were stopped by shifting it back to the loose pulley. This lever reached down, so it could be easily operated by a person standing at the east side of the planer. The endless chain that carried the timbers over the planer bed between the knives was moved by another and entirely different set of pulleys than those revolving the knives, and were set in motion by means of a large iron lever, one end of which was attached to the side of the planer, the other end coming up like a handle. It was so arranged that when the handle was up, the belt moving the endless chain would be loose on the pulleys and would not run, but when it was pressed

down it would move one of the pulleys, thereby tightening the belt and starting the chain in motion. This same lever, when moved up or down, also moved the frame that held the upper set of planing knives up or down, and when a hard or uneven stick of timber was put in, the operator would stand on the east side of the bed and as the harder or thicker places in the timber were reached he would bear down on the lever, which would have the effect of making the belt tighter, the knives run faster and press tighter against the timber. The lever could also be set so that the chain would run without the operator holding it down by hand; this was done by means of a semi-circular iron strap, which was fastened by a bolt to the side of the planer bed, and had notches or clutches in it that caught a lug on the inside of the lever. This strap hung down loose from the side of the bed, so it could easily be moved forward to catch and hold the lug on the lever or pushed back and disengaged therefrom. The upper end of the iron strap extended above the bolt that held it to the planer bed some four or five inches, and near the end a bolt some four inches long passed through it. At one time there had been a wooden handle on this bolt, extending out from the planer bed above the lever, and the operator could grasp the handle and, by moving it backwards or forwards, could catch or disengage the lug on the lever from the clutch in the strap. At the time of the injury this wooden handle was off and the bolt on which it had been played back and forth loosely in the hole, sometimes extending in over the bed, at others out over the lever. It is claimed by appellee that when the handle was on, it extended out over the lever, and if the lever let loose from the strap and flew out it would catch on the handle and would be prevented from going further over. The planer was set lengthways north and south, and the timbers were fed in from the north through the planer, brought back again on a truck and run through again until

smooth. The lever, strap, handle, etc., were all north
of the planing knives, on the east side of the bed, and
almost under but a little west of the other lever that
came down and set in motion the pulleys which moved
the knives. These two levers were so placed that a
man could start or stop both sets of machinery while
standing on the east side of the planer bed, north of
the knife frame. On the upper frame north of the
knives were two rollers to help pass the timbers
through, and also a chip breaker, while south of the
upper knives was a shavings shield.

At the time of the accident two employes had brought
in a car sill and, with appellee's assistance, were run-
ning it through the planer. They had run the sill
through once, and while one of the men was waiting
'for another to come and help him load it on the truck
to take it around to the north end and run it through
again, appellee got the oil can, stepped over to the
machine right by the lever, and while the knives and
carrier were in full motion leaned forward towards
the middle of the machine with oil can in hand, and
was in the act, as he says, of oiling the slats on
the inside of the machine, at the place where the top
knives worked up and down, when his hand was caught
in the knives and cut off at the wrist.

The particular negligence complained of, and on
which the suit is based, is that the machine was old
and out of repair; that the handle was off the bolt
on the upper part of the iron strap, so that the bolt
did not always extend out over the lever to catch the
same in case it became loose from the clutch on the
strap below; that the lever had too much play on the
bolt fastening it to the planer, and that the lug on
the lever and the clutches on the strap had become
worn so that the jar of the running machine would
cause the lever to become loose at the clutch and fly
up past the bolt.

Appellee's theory of the case is that by reason of
the defects, when he stood at the side of the machine

and leaned over and reached in the machine with the oil can in his right hand, the lever jarred loose and flew up past the place where the handle should have extended out, and struck his right arm and knocked his hand into the knives, where it was cut off; that if either the handle had been on, or the lug, clutch and lever in such condition as not to let the lever fly up, the injury would not have occurred. It did not appear that the wooden handle was intended to extend out over the lever to stop it in case it flew up, but was simply a handle more easily to work the strap below, and it was a question whether it would stop the lever if on there.

A full statement of the facts and the claim of appellee in regard to the same has been made, for the reason that the case must be disposed of on the facts. Whether appellant was guilty of the negligence charged against it was a controverted question, upon which there was considerable evidence introduced in support of the claims of the respective parties.

We are of opinion, however, that the uncontroverted facts of the case, in fact appellee's own story of the manner in which he was hurt, shows that he was himself at the time guilty of negligence which very largely contributed to cause his injury.

It clearly appears that appellee was familiar with the planer in question and its operation; that from where he stood he could have easily reached up and taken hold of the lever almost above him, and shifted the belt on the pulleys above, thereby stopping the knives, and that to have so stopped the knives would have taken only about eighteen seconds; that he could have also readily raised the lever at the side of the machine right where he stood and stopped the chain. Appellee testifies: "I certainly knew that these machines run fast. Everybody knows that they are dangerous, but a fellow does not think about it. * * * I knew it was a dangerous place. * * * It does not take very long after pulling the lever to stop the ma-

chine when it is in motion. *If a fellow had just thought of it, he could have reached up there to the place that lever was without moving his body and pulled the lever and stopped the machine.*" It thus clearly appears that appellee undertook to do a work which he knew to be beset with dangers, and neglected to avail himself of the ready means, with which he was also acquainted, of removing the danger before commencing the work. It was a most unfortunate occurrence and appellee has suffered a great affliction, but as it appears that he was guilty of negligence which contributed to bring it about, he cannot recover damages from appellant for his loss.

The judgment of the court below will be reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment:

We find that at the time of the occurrence of the injury for which appellee has brought suit in this case, he was himself guilty of negligence contributing to bring about the result complained of.